Robert F. REYHER, Plaintiff–Appellee,

v.

CHAMPION INTERNATIONAL CORPORATION, Defendant–Appellant.

Robert F. REYHER, Plaintiff–Appellant,

v.

CHAMPION INTERNATIONAL CORPORATION, Defendant–Appellee.

Nos. 91–2393, 91–2430.

United States Court of Appeals, Eighth Circuit.

Submitted March 12, 1992.

Decided Sept. 14, 1992.

---

John Milton Mason, Minneapolis, Minn., argued (David R. Abrams, on the brief), for appellant.

Gary Lawrence Huusko, St. Paul, Minn., argued (Neil Convery, on the brief), for appellee.

Before JOHN R. GIBSON, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and LOKEN, Circuit Judge.

LOKEN, Circuit Judge.

After a four-day trial, a jury found that Champion International Corporation had willfully violated the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–34, in demoting employee Robert Reyher. The jury awarded Reyher $132,-679 in compensatory damages, and judgment was entered for that amount. Following various postjudgment motions, the district court awarded Reyher an additional $123,372 in liquidated damages, $54,495 in prejudgment interest, and $85,425 in attorney's fees and costs. Both parties appeal. We conclude that Reyher's motions for liq-uidated damages and prejudgment interest were untimely and reverse those awards. Otherwise, we affirm.

## I.

Champion argues that the evidence at trial was insufficient to support the jury's verdict. Therefore, we will summarize that evidence viewed most favorably to Reyher.

When Champion acquired the Hoerner–Waldorf Company in 1977, Reyher was fifty-four years old and held two high-level positions: "V.P. Eastern Area Manager," with supervisory responsibility for six paper plants in the company's Container Division, and "V.P. General Manager" of one of those six plants, in Birmingham Alabama. In Reyher's six years as Area Manager, four of five money-losing plants became profitable. Nonetheless, Reyher felt shortchanged by his 1978 bonus and said as much to a superior, who chuckled and responded, "At your age, you shouldn't be rocking the boat."

In the summer of 1978, Champion demoted Reyher and the five other Container Division Area Managers. Champion consolidated the six areas into three new areas, headed by three new executives who were younger than the Area Managers they replaced. In 1980 and 1981, further reorganization resulted in the reinstatement of Reyher's former area and the promotion of three new people into Area Manager positions. Reyher testified that he was qualified for these positions, but each job went to a younger executive. Reyher remained the plant manager at Birmingham until late 1982, but his compensation decreased during this period.

Despite conditions that Champion described as "the worst economic downturn since the Great Depression," the company pressured its plant managers for increased production. Reyher received personal evaluations critical of the low volume of business in his plant. On October 11, 1982, Reyher was removed as Birmingham plant manager at the age of fifty-nine "because of poor performance." The plant's sales manager, younger and less experienced

than Reyher, was promoted to take his place. Reyher was told "to go home and stay close to the phone." Three months later Champion offered, and Reyher accepted, a sales position at the Tupelo, Mississippi corrugated plant, working only on individual accounts assigned by Champion.

Reyher described most of these assigned accounts as nonperforming "dogs" that other salesmen would no longer "waste their time on." At least twice Reyher visited a newly assigned account only to find an abandoned building, and several other companies assigned to him did not exist. When Reyher had some success with accounts in Jackson, Mississippi, Champion took those accounts away from him. From the time he began the Tupelo job, his compensation was systematically decreased. In early 1986, Reyher thought he had reached agreement to transfer to a job at the plant in Memphis, Tennessee, until the Champion Area Manager "called [me] back and said that because of my age and the fact that it would involve a move which would be expensive, that I was not going to be considered." A few days later, Reyher retired.

In March 1983, three days after he accepted the Tupelo job, Reyher filed an age discrimination complaint with the EEOC, charging that his 1978 and 1982 demotions were calculated "to reduce [Champion's] pension liabilities by demoting older employees to lower paying positions as they approach retirement age or provoke them into resigning with the same pension cost reduction their ultimate goal." Reyher commenced this lawsuit in December 1983, and the trial commenced in November 1990. At the close of the evidence, the district court granted a directed verdict dismissing Reyher's 1978 demotion claim as time barred but submitted the 1982 demotion claim to the jury. The jury found that Reyher's age was a determining factor in his 1982 demotion, that Champion willfully demoted him on the basis of age, and that he sustained compensatory damages of $132,679.

On December 6, 1990, after receiving the jury verdict, the district court issued its written "Judgment in a Civil Case" which provided "[t]hat judgment is hereby entered in favor of the plaintiff and against the defendant in the amount of $132,-679.00." Both parties then filed postjudgment motions within the ten-day period required by Fed.R.Civ.P. 59(e). Reyher moved "pursuant to Rule 59" for an order granting him a partial new trial on his dismissed 1978 demotion claim and "amending the judgment" to vacate dismissal of that claim. Champion moved for JNOV or a new trial and also moved to stay execution of the judgment. Reyher opposed the motion to stay; the district court granted the stay but required Champion to post a $125,000 bond.

On February 13, 1991, more than two months after entry of judgment, Reyher filed a "Motion for Liquidated Damages, Attorney Fees, and Prejudgment Interest." On May 23, the district court ruled on all posttrial motions. After denying both parties' Rule 59 motions, the district court granted Reyher's February 13 motions for liquidated damages, prejudgment interest, and attorney's fees. The court rejected Champion's argument that these motions were untimely. Reyher's claim for liquidated damages under ADEA "is clearly a separate claim bringing Rule 54(b) into play," the court explained, and therefore its December 6 judgment was not final because it did not include a Rule 54(b) certification.

## II.

■ Champion first argues that the district court erred in denying its motion for judgment notwithstanding the jury's verdict. In resolving this issue, we extend the value of Reyher's evidence to its rational limit, and we disregard Champion's affirmative evidence unless it is "completely disinterested, uncontradicted, and unimpeached." *Dace v. ACF Indus., Inc.*, 722 F.2d 374, 376 & n. 6 (8th Cir.1983). We then determine whether, "giving [the employee] the benefit of all favorable inferences, there was sufficient evidence to support the jury's finding that age was a determining factor in the [employer's] decision." *Morgan v. Arkansas Gazette*, 897

F.2d 945, 949 (8th Cir.1990). Nothing more than "reasonable inferences sustaining the position of the nonmoving party" need exist to affirm the district court's denial of JNOV. *Gilkerson v. Toastmaster, Inc.*, 770 F.2d 133, 136 (8th Cir.1985).

After carefully examining the record, once again "[w]e confess that the case is close," even under our deferential standard of review. *Williams v. Valentec Kisco, Inc.*, 964 F.2d 723, 727 (8th Cir.1992). *See also Morgan*, 897 F.2d at 951; *Brooks v. Monroe Systems for Business, Inc.*, 873 F.2d 202, 204 (8th Cir.), *cert. denied*, 493 U.S. 853, 110 S.Ct. 154, 107 L.Ed.2d 112 (1989); *Bethea v. Levi Strauss & Co.*, 827 F.2d 355, 358 (8th Cir.1987); *Gilkerson*, 770 F.2d at 136. Reyher's evidence raises an inference that Champion's 1978 and 1981 restructurings were an intentional, age-based housecleaning of the Area Manager ranks, replacing six older Area Managers with five younger ones. From that premise, the jury could rationally view Reyher's 1982 demotion to the Tupelo sales job as a continuation of Champion's practice of reducing its pension costs by driving older, unfavored executives into lower-paying jobs or out of the company altogether. While we can perceive other, perhaps more reasonable conclusions to draw from the evidence at trial, "our task is not to act as the trier of fact. Accordingly, we are compelled to conclude that there was sufficient evidence to support the jury's conclusion that age was a determining factor" in the 1982 demotion. *Morgan*, 897 F.2d at 951 (citation omitted).

### III.

However, Champion's attack on the remaining elements of Reyher's award has greater merit. The district court held that Reyher's February 13 postjudgment motions were timely under Rule 54(b). We disagree.

The district court's decree of December 6, 1990, awarding Reyher judgment in the amount of $132,679 was, on its face, a final judgment. Unlike the clerk's minute entry in *Formby v. Farmers & Merchants Bank*, 904 F.2d 627, 630 (11th Cir.1990), the judgment was signed by the district court, was reflected on a separate document, and was entered on the district court's docket along with the notation, "Terminates Case." This judgment complied with Rule 58. Moreover, it was treated by both parties as a final judgment; each filed a Rule 59 motion to alter or amend within the prescribed ten days, and Reyher opposed Champion's motion to stay Reyher's ability to execute on his judgment. There was no request for a Rule 54(b) determination; Reyher only raised the Rule 54(b) issue when defending the timeliness of his February 13 motions.

"Rule 54(b) does not apply to a single claim action.... It is limited expressly to multiple claims actions in which one or more but less than all of the multiple claims have been finally decided and are found to be otherwise ready for appeal." *Liberty Mutual Ins. Co. v. Wetzel*, 424 U.S. 737, 742–43, 96 S.Ct. 1202, 1206, 47 L.Ed.2d 435 (1976). "[A] complaint asserting only one legal right, even if seeking multiple remedies for the alleged violation of that right, states a single claim for relief." *Id.* at 743 n. 4, 96 S.Ct. at 1206 n. 4.

In *Williams v. St. Louis Diecasting Corp.*, 611 F.2d 1223, 1224 (8th Cir.1979), we held that a claim of employment discrimination is but a single claim, so that when the issues of liability and remedy were bifurcated for trial, Rule 54(b) did not provide a basis for an interlocutory appeal of the order entered after the first trial. Likewise, the multiple remedies available in ADEA cases do not transform a single claim of intentional age discrimination into multiple claims for Rule 54(b) purposes. While the finding of "willfulness" that permits the award of ADEA liquidated damages requires an additional quantum of evidence, *see Morgan*, 897 F.2d at 952, such a determination is made from the "same nucleus of operative fact" that defines the single claim. *Ruple v. City of Vermillion*, 714 F.2d 860, 861 (8th Cir.1983), *cert. denied*, 465 U.S. 1029, 104 S.Ct. 1290, 79 L.Ed.2d 692 (1984). Therefore, *Williams* establishes that the district court erred in applying Rule 54(b). The timeliness of

Reyher's February 13 motions must be determined under Rule 59 and Rule 60, the rules applicable to postjudgment motions.

■ Reyher's February 13 motions were obviously untimely if governed by Rule 59. Rule 59(e) and its ten-day time limit apply to motions for "reconsideration of matters properly encompassed in a decision on the merits." *White v. New Hampshire Dept. of Employment Sec.*, 455 U.S. 445, 451, 102 S.Ct. 1162, 1166, 71 L.Ed.2d 325 (1982). In *White*, the Court held that a post-judgment motion for an attorney's fee award is not subject to Rule 59's ten-day time limit because it "raises legal issues collateral to the main cause of action—issues to which Rule 59(e) was never intended to apply." 455 U.S. at 451–52, 102 S.Ct. at 1166 (footnote omitted). On the other hand, in *Osterneck v. Ernst & Whinney*, 489 U.S. 169, 175, 109 S.Ct. 987, 991, 103 L.Ed.2d 146 (1989), the Court held that a motion for prejudgment interest is subject to Rule 59(e) because it "is an element of plaintiff's complete compensation" and it "does not raise issues wholly collateral to the judgment in the main cause of action." *White* and *Osterneck* are controlling. They establish that Reyher's motion for attorney's fees was not governed by Rule 59 but his motion for prejudgment interest was.

■ That leaves his motion for an award of liquidated damages. Reyher argues that Rule 59 does not apply because this motion did not seek to amend the judgment or obtain relief from it—it sought additional damages that should have been automatically and ministerially added by the trial judge. However, the Supreme Court rejected this argument in *Osterneck*, concluding that Rule 59 applies even if prejudgment interest is available as a matter of right. 489 U.S. at 176 n. 3, 109 S.Ct. at 992 n. 3. Moreover, we disagree that the trial court's postverdict award of liquidated damages is a ministerial task; our cases demonstrate that it often requires "painstaking study" of the plaintiff's case on the merits. *See Morgan*, 897 F.2d at 949. Finally, ADEA liquidated damages are "punitive in nature," *Trans World Airlines, Inc.*

*v. Thurston*, 469 U.S. 111, 125, 105 S.Ct. 613, 624, 83 L.Ed.2d 523 (1985), and Rule 59 applies to postjudgment motions for punitive damages. *See McConnell v. MEBA Medical & Benefits Plan*, 778 F.2d 521, 526 (9th Cir.1985).

Rule 60(b)(1) permits a district court, upon a party's motion made "within a reasonable time," to grant relief from a final judgment on grounds of "mistake, inadvertence, surprise, or excusable neglect." A motion can only be considered under Rule 60(b)(1) if it states grounds for relief available under Rule 60. *See, e.g., Spinar v. South Dakota Bd. of Regents*, 796 F.2d 1060, 1062–63 (8th Cir.1986). Rule 60(b) "provides for extraordinary relief which may be granted only upon an adequate showing of exceptional circumstances." *United States v. Young*, 806 F.2d 805, 806 (8th Cir.1986). *Accord, Taylor v. United States*, 642 F.2d 1118, 1119 (8th Cir.1981); *Horace v. St. Louis S.W.R.R.*, 489 F.2d 632, 633 (8th Cir.1974); *Hoffman v. Celebrezze*, 405 F.2d 833, 835 (8th Cir.1969); *Farmers Co-op. Elevator Ass'n v. Strand*, 382 F.2d 224, 232 (8th Cir.1967). "[W]hen a motion can fairly be characterized as one under Rule 59(e) (*i.e.*, lacking any special circumstances justifying relief under Rule 60(b)) it must be filed within the 10–day period and will not be treated under Rule 60(b)(1)." 7 Moore's Federal Practice, ¶ 60–22[3]. *See Lomax v. Armontrout*, 923 F.2d 574, 575 (8th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 60, 116 L.Ed.2d 36 (1991).

■ Here, Reyher has specifically disclaimed reliance upon Rule 60(b). He did not bring the February 13 motions under Rule 60, and his brief on appeal states that these motions "should not be characterized ... as motions for relief from the judgment pursuant to Rule 60." This is arguably a waiver of Rule 60(b) protection. *See Landau & Cleary, Ltd. v. Hribar Trucking, Inc.*, 867 F.2d 996, 1000–01 (7th Cir. 1989); *Labuguen v. Carlin*, 792 F.2d 708, 709 (7th Cir.1986). But in any event Reyher's approach to the issue deprives us of any record basis to find the extraordinary

circumstances required to warrant Rule 60(b) relief.[1]

Therefore, we conclude that Reyher's February 13 motions for liquidated damages and prejudgment interest were governed solely by Rule 59. When a motion is untimely under Rule 59(e), "the district court loses jurisdiction over that motion and any ruling on it becomes a nullity." *Sanders v. Clemco Indus.*, 862 F.2d 161, 168 (8th Cir.1988). Accordingly, the district court's award of $123,372 in liquidated damages and $54,495 in prejudgment interest must be reversed.

### IV.

As we noted previously, Reyher's motion for attorney's fees was not governed by Rule 59 and its ten-day time limit. *See White*, 455 U.S. at 451–52, 102 S.Ct. at 1166; *Young v. Powell*, 729 F.2d 563, 566 (8th Cir.1984). To ensure that attorney's fees motions are nonetheless made within a reasonable time, we have urged the district courts in this circuit to "adopt a uniform rule requiring the filing of a claim for attorney's fees within twenty-one days after entry of judgment." *Obin v. District No. 9, IAM*, 651 F.2d 574, 583 (8th Cir. 1981). District of Minnesota Local Rule 6 (now Local Rule 54.3(b)) provides that a motion for attorney's fees "must be delivered to the Clerk of Court within thirty (30) days after the entry of judgment in the action."

■ Reyher's motion for attorney's fees was made sixty-nine days after the December 6, 1990, entry of judgment. However, in its May 1991 order awarding attorney's fees, the district court stated that, had it not adopted the Rule 54(b) analysis we have now rejected, it "would have found the ambiguity as to the entry of liquidated damages sufficient to excuse plaintiff from the time requirement of the local rule." Although we have stated that attorney's fee motions must be filed "within a time to be prescribed by local rule," *Obin*, 651 F.2d at 584, and although the district court's rationale is not entirely persuasive,[2] application of local rules is a matter peculiarly within the district court's province. *See Braxton v. Bi–State Dev. Agency*, 728 F.2d 1105, 1107 (8th Cir.1984) ("It is for the district court to determine what departures from its rules may be overlooked.") Since an award of attorney's fees was clearly warranted in this case, we will not disturb the attorney's fee portion of the district court's judgment.

### V.

■ Reyher cross appeals the district court's dismissal of his 1978 demotion claim as barred by the ADEA's statute of limitations. *See* 29 U.S.C. § 626(e). Reyher seeks an equitable tolling of the statute, arguing that not until after the 1982 demotion did it become "evident to him" that the 1978 demotion was the first move through which, "by its clever and beguiling ways," Champion "intended to force him out of the company."

To merit equitable tolling of the statute, Reyher must show that he missed the filing deadline because "positive misconduct" by Champion wrested control of the circumstances "out of his hands." *Heideman v. PFL, Inc.*, 904 F.2d 1262, 1266 (8th Cir. 1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 676, 112 L.Ed.2d 668 (1991). Reyher's only evidence of relevant subterfuge—the 1978 and 1981 reorganizations—were actions completed and known to Reyher for years before he filed suit. Thus, we agree with the district court that "[t]here is nothing on the record to indicate that the company successfully misled [plaintiff] or prevented

---

1. There is also some question whether Rule 60(b) could apply to Reyher's February 13 motions since Rule 60(b) "cannot be used to impose additional affirmative relief." *Adduono v. World Hockey Ass'n*, 824 F.2d 617, 620 (8th Cir.1987).

2. There was no apparent "ambiguity as to the entry of liquidated damages" during the thirty-day period for filing an attorney's fee motion since Reyher did not move for liquidated damages until weeks later. On the other hand, there were Rule 59 motions pending that could clearly affect the award of attorney's fees, so there was good reason not to apply Local Rule 6 rigidly in this situation.

him from discovering or pursuing his rights under the ADEA." *Heideman*, 904 F.2d at 1266.

We have carefully considered the new trial and compensatory damages issues Champion has raised on appeal and conclude they are without merit. That portion of the district court's judgment awarding liquidated damages and prejudgment interest is reversed. In all other respects, the judgment is affirmed.